UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

REYNALDO ROSA, JR., et al.,

                                 Plaintiffs,

                    v.

TRISTAN EATON,

                                 Defendant.

23 Civ. 6087 (DEH)

**OPINION**
**AND ORDER**

---

DALE E. HO, United States District Judge:

Plaintiffs Reynaldo Rosa, Jr. ("Rosa") and Little Italy Street Art Project NYC ("LISA Project") (together, "Plaintiffs") bring suit against Defendant Tristan Eaton ("Defendant," or "Eaton"), alleging counts of copyright infringement and defamation. *See* First Am. Compl. ("FAC") ¶¶ 1, 7, 9, ECF No. 18. Before the Court is Defendant's partial motion to dismiss Plaintiffs' Count III defamation claim. *See* Partial Mot. to Dismiss, ECF No. 22. For the reasons discussed herein, Defendant's motion is **GRANTED**.

## BACKGROUND

### A.  Procedural History

On July 14, 2023, Plaintiffs filed a copyright infringement claim against Defendant. *See* Compl., ECF No. 1. On October 16, 2023, the case was reassigned to the undersigned. *See* Oct. 16, 2023, Min. Entry. On November 20, 2023, Plaintiffs filed the FAC, the operative pleading in this litigation, adding allegations that Eaton made "defamatory/libelous statements" about LISA Project. *See* FAC ¶ 74. On December 15, 2023, Defendant filed a partial motion to dismiss Plaintiffs' Count III defamation claim. *See* Partial Mot. to Dismiss. That motion is now fully briefed before the Court.

**B.  Factual Background**

The following facts are drawn from the FAC and are assumed to be true solely for purposes of adjudicating Defendant's motion.  *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).[1]

Plaintiff Rosa is a freelance visual artist, photographer, and co-founder/officer of LISA Project.  FAC ¶ 8.  Plaintiff LISA Project is a 501(c)(3) non-profit organization that, *inter alia*, "organizes and provides resources for the creation of public murals."  *Id*. ¶ 11.  Defendant Eaton is an artist, designer, and entrepreneur who paints large-scale public murals.  *Id*. ¶ 14.

In 2013, LISA Project coordinated and arranged for Eaton to create two murals.  *See id.* ¶¶ 19, 23.  As relevant here, a decade later, on July 17, 2023, Eaton posted the following to his Instagram account: "just got word the Lisa [*sic*] Project is trying to destroy this mural in Soho without my consent or notification!!! . . . I blocked them a long time ago because I believe they're criminals preying on our culture.  Please Please beware of working with them @nycmayor @obeygiant @carcelona @goldbarnewyork #scum #predators."  *Id.* ¶ 43 ("July 17 Post").  Next, in response to a user's comment on the post, Eaton stated that "[d]estroying public art shouldn't be at the whim of greedy crooks with a vendetta."  *Id*. ¶ 44.  The July 17 Post has garnered more than 3,000 "likes" and 152 comments.  *Id.* ¶ 45.

Shortly after Eaton published the July 17 Post, "LISA Project was inundated with e-mails, calls, messages, and social media comments derisively attacking the organization and imploring it not to 'destroy' the Big City of Dreams Mural, at Eaton's direction."  *Id*. ¶ 46.  Plaintiffs allege that the July 17 Post was incorrect, as LISA project did not have any interest in

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

"destroying" Eaton's mural. *Id*. ¶ 47. Rather, the owner of the building on which Eaton's mural was painted "wanted to replace it," and sought LISA Project's assistance. *Id.* ¶¶ 47-48. Plaintiffs further contend that Eaton's post "resulted in significant damage to LISA Project's charitable activities and overall reputation." *Id*. ¶ 51. For example, one company informed LISA Project that "due to the statements made by Eaton on social media, the company had 'issues' and was no longer willing to sponsor LISA Project's activities as part of [its] Hip-Hop celebration." *Id*. ¶ 53. Eaton has not deleted the July 17 Post from his Instagram account. *Id*. ¶ 54.

## LEGAL STANDARDS

### A. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "For a plaintiff to nudge her claim across the line from conceivable to plausible, she must raise a reasonable expectation that discovery will reveal evidence of the wrongdoing alleged, even if it strikes a savvy judge that actual proof of those facts is improbable." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021). "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote*, 9 F.4th at 106-07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

On a Rule 12(b)(6) motion to dismiss, a court may consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit," *Kalyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1

3

(2d Cir. 2014); documents that are "integral to the complaint," even when the plaintiff "chooses not to attach [the document] to the complaint or incorporate [the document] by reference," *Condit v. Dunne*, 317 F. Supp. 2d 344, 356 (S.D.N.Y. 2004) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)); "any statements or documents incorporated . . . by reference" in the pleading, *Kalyanaram*, 742 F.3d at 44 n.1; and "matters of which judicial notice may be taken." *Id*. Among the matters of which a court may take judicial notice are public online postings, including "information publicly announced on a party's website." *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006).

## DISCUSSION

As explained further below, the Court concludes that the alleged defamatory statements constitute permissible opinion. Accordingly, Defendant's motion is **GRANTED**. Count III of Plaintiffs' FAC is hereby dismissed.

The sole question before the Court on this partial motion to dismiss is whether the July 17 Post plausibly constitutes actionable defamation. *See generally* Partial Mot. to Dismiss. "Under New York law[,] a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). Here, Plaintiffs fail to establish the first element, i.e., that the July 17 Post was a defamatory statement.[2]

A defamatory statement is "one that exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or

---

[2] Given that all five factors "must" be "established," *see Palin*, 940 F.3d at 809, Plaintiffs' failure to allege the first element of their defamation claim is dispositive. Accordingly, the Court does not address whether Plaintiffs have established any other factor.

induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society." *Sheindlin v. Brady*, 597 F. Supp. 3d 607, 624 (S.D.N.Y. 2022). "Whether particular words are defamatory presents a legal question to be resolved by the court[s] in the first instance." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000). The Court's analysis is guided by three principles. First, it "must give the disputed language a fair reading in the context of the *publication as a whole. . . .*[and] *tested against the understanding of the average reader*." *Id*. (emphasis in original). Second, it must "not [] strain to interpret such writings in their mildest and most inoffensive sense to hold them nonlibelous." *Id.* Third, the Court must construe the words "not with the close precision expected from lawyers and judges[,] but as they would be read and understood *by the public to which they are addressed*." *Id.* (emphasis in original).

As a threshold matter, because there is "no such thing as a false idea," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974), "courts must distinguish between statements of fact, which may be defamatory, and expressions of opinion, which are not defamatory; instead, [opinions] receive absolute protection under the New York Constitution." *Mirza v. Amar*, 513 F. Supp. 3d 292, 297 (E.D.N.Y. 2021). To determine whether a statement is a fact or an opinion, courts "employ a flexible approach" that "generally consider[s]" three factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal [to] readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000). "These criteria apply whether the defendant is a member of the media or not." *Id*. With these guiding principles in

5

mind, the Court turns to the statements challenged by Plaintiffs in this case and determines that they constitute protected opinion.

Plaintiffs allege that Defendant's statement that he "just got word the Lisa [*sic*] Project is trying to destroy [his] mural in Soho without [his] consent or notification," FAC ¶ 43, is defamatory. Specifically, Plaintiffs claim that Defendant "crossed the line into defamation" by "unmistakably asserting" that LISA Project "was committing *criminal acts* by proactively 'trying to destroy' a mural in violation of [the Visual Artists Rights Act ('VARA')], 17 U.S.C. §113(d)." *See* Pl.'s Mem. of L. in Opp'n to Def.'s Partial Mot. to Dismiss ("Opp'n") at 15, ECF No. 25 (emphasis in original). The Court disagrees. Giving the above statement a fair reading in context as it would be understood by the average reader in the public, and without giving the statement its mildest or most inoffensive sense, the Court cannot read it as "unmistakably asserting . . . *criminal acts*" by Defendants. *Id.* At worst, the statement is hyperbolic, but it lacks the specificity of an accusation of criminal conduct. *See McNamee v. Clemens*, 762 F. Supp. 2d 584, 604 (E.D.N.Y. 2011) ("Colloquial phrases like 'shake down' or 'crawling up your back' are hyperbolic; they are 'loose' statements that don't reasonably convey the specificity that would suggest that [the defendant] was seriously accusing [the plaintiffs] of committing [a] crime.").

Plaintiffs next take issue with Defendant's statement, referring to LISA Project, "I believe they're criminals preying on our culture"—followed by the tags "#scum" and "#predators"—as well as his statement that "[d]estroying public art shouldn't be at the whim of greedy crooks with a vendetta." FAC ¶¶ 43-44. Plaintiffs claim that these remarks were defamatory because they would lead an "ordinary reader" to "reasonably presume that LISA Project had either 'destroyed' other murals without notifying the artist, attempted to extort money from artists or engaged in fraud in the past, or [engaged in] some other similar 'criminal' and 'predatory' misconduct." Pl.'s Opp'n at 23.

6

Once again, the Court disagrees.  A vague suggestion of criminality cannot be a basis for a defamation claim.  *See Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 312 (S.D.N.Y. 2017) (holding that a statement that the plaintiff "engaged in 'extortion, manipulation, fraud, and deceit'" is a "a vague statement . . . of the 'loose, figurative, or hyperbolic' sort that is not actionable for defamation").  Eaton's epithets, unlike stated facts, are not "capable of being proven true or false." *Flamm*, 201 F.3d at 153.  Instead, courts have recognized that words like "scum," "predators," "greedy crooks" and "criminals preying on [street art] culture" are vague, imprecise statements of hyperbole considered nonactionable opinion. *See, e.g.*, *Galasso v. Saltzman*, 839 N.Y.S.2d 731, 732 (App. Div. 2007) (holding that a statement that a party in a real estate dispute was "a criminal," "engaged in criminal conduct," against the property in an effort to "destroy both our properties and our beach" was not actionable); *600 W. 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 937-38 (N.Y. 1992) (holding that a statement that "the lease and proposition is as fraudulent as you can get and it smells of bribery and corruption" was not actionable defamation given loose nature of the language of the remarks); *Uribe v. Nieves*, No. 17 Civ. 5155, 2022 WL 17770288 at *12-13, (E.D.N.Y. Sep. 13, 2022) (holding that defendant's statements on Instagram concerning a plastic surgeon who performed breast and body reconstructions on her as "money hungry," a "butcher," and "scammer doctor" are non-defamatory); *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014) ("[T]he epithets . . . 'sucker,' 'fool,' 'frontman,' 'industrial waste,' . . . and 'crooks or morons' . . . are hyperbole and therefore not actionable opinion.").

Examining Defendant's statements in context, as the Court must, *see Celle*, 209 F.3d at 177, lends further support to the Court's conclusion that the disputed language was non-defamatory.  Eaton posted his statements exclusively to his Instagram account.  Online fora, such as Instagram, are informal, unedited, and typically regarded as fora for stating opinions. *See,*

*e.g.*, *Valley Elecs. AG v. Polis*, No. 21 Civ. 2108, 2022 WL 893674, at *2 (2d Cir. Mar. 28, 2022) ("[T]he article published on the blog section of [defendant's] personal website and [defendant's] Instagram comments used 'medi[a] that [are] typically regarded by the public as . . . vehicle[s] for the expression of individual opinion rather than rigorous and comprehensive presentation of factual matter."); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 553 (S.D.N.Y. 2020) (describing social media fora as "informal and freewheeling" platforms where potentially defamatory statements are afforded "less credence").  That is not to say that statements on social media are immunized from liability for defamation.  But here, an average reader viewing Eaton's Instagram would understand his posts and comments as reflective of Eaton's opinions.  *See Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y 2015) ("New York Courts have consistently protected statements made in online forums as statements of opinion rather than fact."); *Sandals Resorts Int'l Ltd. v. Google, Inc*., 925 N.Y.S.2d 407, 415-16 (2011) (noting that "[t]he culture of Internet communications, as distinct from that of print media such as newspapers and magazines, has been characterized as encouraging a freewheeling, anything-goes [writing] style" and that readers "give less credence to allegedly defamatory remarks published online than to similar remarks made in other contexts").

In sum, because the July 17 Post contains no "precise and readily understood meaning," "capable of being proven true or false," it is an "expression[] of opinion . . . entitled to the absolute protection of the First Amendment."  *Live Face on Web, LLC*, No. 15 Civ. 4779, 2016 WL 1717218, at *6 (S.D.N.Y. Apr. 28, 2016).  Because Plaintiffs cannot establish the first element of their defamation claim, *see Palin*, 940 F.3d at 809, their Count III claim is now dismissed.[3]

---

[3] Plaintiffs do not explicitly state a claim for defamation by implication.  *See generally* FAC. But "[t]o the extent that Plaintiff[s] also allege[] a theory of implied defamation, this too fails for

**CONCLUSION**

For the reasons discussed herein, Defendant's partial motion to dismiss is **GRANTED**.

Defendant additionally requests that the Court "sever" LISA Project as a plaintiff in this action,

"since it has no remaining causes of action to pursue." *See* Def.'s Mem. of L. in Supp. of Partial

Mot. to Dismiss at 17, ECF No. 23.  Plaintiffs are hereby **ORDERED** to file a letter on ECF in

**two weeks** briefing the Court on whether, in light of the Court's decision dismissing Count III,

LISA Project continues to have a stake in this case.  That letter shall not exceed three (3) pages.

Additionally, as stated at ECF No. 32, the parties' joint pretrial statement shall be due within **30**

**days** of this Opinion and Order.

The Clerk of Court is directed to terminate ECF No. 22.

SO ORDERED.

Dated: June 25, 2024
      New York, New York

_____
            DALE E. HO
     United States District Judge

---

the same reason" that their defamation claim fails—i.e., because opinions are not actionable.
*Ganske*, 480 F. Supp. 3d at 555.